FILED'08 AUG 15 15:23 USDC-ORP

AO91 (Rev. 8/01)  Criminal Complaint

# UNITED STATES DISTRICT COURT

DISTRICT OF _____ **OREGON** _____

UNITED STATES OF AMERICA
V.

Benjamin Jacob Kerensa

**CRIMINAL COMPLAINT**

Case Number: 08 MJ-479

I, the undersigned complainant, state that the following is true and correct to the best of my knowledge and belief. On or about __08/04/2006__ in __Marion__ County, in
(Date)
the _____ District of __Oregon__ defendant( ) did,

*(Track Statutory Language of Offense)*

knowingly and unlawfully assume or pretend to be an officer or employee acting under the authority of the United States or an agency thereof, namely the Federal Bureau of Investigation, and acted as such,

in violation of Title __18__ United States Code, Section(s) __912__ .

I further state that I am a(n) _____ FBI Special Agent _____ and that this complaint is based on the
Official Title
following facts:

See the attached affidavit of W. Monty Waldron, attached hereto and incorporated herein by reference.

Continued on the attached sheet and made a part of this complaint:    X  Yes    ☐  No

_Signature of Complainant_

W. Monty Waldron
_Printed Name of Complainant_

Sworn to before me and signed in my presence,

__Aug 15, 2008__
Date

at

Portland, Oregon
City and State

The Honorable Paul Papak, U.S. Magistrate Judge
_Name and Title of Judicial Officer_

_Signature of Judicial Officer_

STATE OF OREGON        )
                       )        AFFIDAVIT OF W. MONTY WALDRON
County of Multnomah    )

I, W. Monty Waldron, being duly sworn, depose and state as follows:

1.      I am a Special Agent of the Federal Bureau of Investigation.  I have been so employed since September 2007.  I am presently assigned to the FBI office in Salem, Oregon.  As a Special Agent, I am responsible for investigating violations of federal law, including those concerning impersonation of an officer or employee of the United States. I am a law enforcement officer authorized to apply for and execute federal search and arrest warrants.

2.      I make this affidavit in support of the following:

      a.      A criminal complaint and arrest warrant charging Benjamin Jacob Kerensa, a white male, date of birth April, 03, 1984, with impersonating a federal officer or employee, in violation of Title 18, United States Code, Section 912;

      b.      A search warrant for the contents of a Dell Inspiron Model 1825 laptop computer, serial number CN0U990C7016G82E0DG6, along with accessories therefor, all of which are presently in the custody of the Salem Police Department; and

      c.      A search warrant for the contents of a Verizon Wireless cellular telephone, also presently in the custody of the Salem Police Department.

3.      The statements in this affidavit are based on my own investigation, my training and experience, and information and statements provided to me by other FBI agents and state and local law enforcement personnel.  I have not included each and every fact known to me concerning this investigation in this affidavit.  I have set forth only those facts which I believe are necessary to establish probable cause to believe that Benjamin Jacob Kerensa has committed the offense of impersonating a federal officer or employee, and that evidence, fruits, and instrumentalities of that crime will be found in the contents of the Dell Inspiron laptop computer and the Verizon Wireless cellular telephone, described above, that were seized from Benjamin Kerensa at the time of his arrest by Salem Police officers on August 13, 2008.

## OVERVIEW OF THE INVESTIGATION

4.      To date, the investigation reveals that Benjamin Kerensa has made multiple calls to the Salem Police Department 911 line, as well as to the Salem Police Department non-emergency dispatch line, in which he claimed to be a Special Agent of the Federal Bureau of Investigation who was in need of police assistance in serving a federal arrest warrant.

5.      On August 04, 2008, at approximately 5:30PM, the Salem Police Department (SPD) called the Salem office of the FBI to report that they had received a call from a man who identified himself as Special Agent Richard Ellis from the "Portland Field Office" of the FBI.  The caller requested assistance from SPD in serving a "no-bail

PAGE 2 -     AFFIDAVIT OF W. MONTY WALDRON

warrant" out of the Northern District of California on a subject the caller identified as

Ernest Hererra.  The caller reported to SPD Dispatch that he had located Hererra at 3684

Fisher Road NE, Salem, Oregon.  The caller also advised SPD Dispatch that he was in a

Blue Ford Crown Victoria car with California License Plate Number TV0212.  SPD

Dispatch requested that the caller provide a contact phone number.  The caller provided

SPD Dispatch with the number (415) 621-1524.  SPD Dispatch requested that the Salem

Resident Agency of the FBI verify that the caller was in fact an FBI Agent.  I determined

that there is no employee within the FBI by the name of Richard Ellis and provided this

information to the SPD.  The call placed by "Special Agent Ellis" to SPD Dispatch was

recorded.  I have since obtained and listened to a copy of the recorded call.

6.      The address that the caller provided to SPD Dispatch was determined to be

the manager's office of the Columbia Village Apartments.  On August 6, 2008, agents

from the Salem FBI office contacted the on-duty manager of the Columbia Village

Apartments.  The manager stated that he had no knowledge or information about the

incident, about "Special Agent Richard Ellis," or about a subject named Ernest Hererra.

That same day, I called (415) 652-1524, the telephone number provided to SPD Dispatch

by "Special Agent Ellis." The person who answered, who lives in San Francisco,

California, did not know anyone named Richard Ellis, and had no idea why someone

would provide his phone number while claiming to be an FBI Agent.  It appears that the

PAGE 3 -      AFFIDAVIT OF W. MONTY WALDRON

person claiming to be "Special Agent Richard Ellis" randomly selected that telephone number and gave it to SPD Dispatch.

7.      On August 04, 2008, Benjamin Kerensa called the Willamette Valley Communications Center, which handles 911 emergency calls in the Marion and Polk Counties area, to report that his estranged wife, who lives in Crescent City, California, was making harassing telephone calls to him. During that call, which was recorded, Benjamin Kerensa identified himself by name, provided a cellular telephone number of (707) 485-4573, and stated that he lived at 3535 Fisher Road Northeast, Salem, Oregon. I have reviewed the recording of that 911 call. The voice of the person calling himself Benjamin Kerensa sounds the same as the voice of the person who called himself "Special Agent Richard Ellis"during the call on August 4, 2008.

8.      On August 05, 2008, Benjamin Kerensa was present at a domestic disturbance in Dallas, Oregon. During that domestic disturbance, he called 911 to provide additional information about the disturbance. Deputies from the Polk County Sheriff's Office responded to the domestic disturbance call. Data obtained from the 911 call showed that the caller's number was (707) 485-4573 and that the call was placed from the Dallas, Oregon, area.

9.      Sometime after the domestic disturbance incident, Salem Police officers contacted some of the people involved in the incident. During that contact, the SPD officers determined that Benjamin Kerensa had instigated the domestic disturbance. SPD

PAGE 4 -      AFFIDAVIT OF W. MONTY WALDRON

officers played recordings of the caller identifying himself as Special Agent Richard Ellis to the other individuals involved in the above-mentioned domestic disturbance. Those individuals identified the caller's voice as that of Benjamin Kerensa.

10.     On August 09, 2008, a call was made to the Salem Police Department by a caller who identified himself as FBI Special Agent Chris Andrews. During this recorded call, "Agent Andrews" provided a call back number of (707) 485-4573. He requested police assistance in apprehending another "wanted" suspect by the name of Daniel Nogara at 312 Owens Street, Apartment 6, Salem, Oregon. "Agent Andrews" claimed that the suspect had a history of drug abuse and was possibly in possession of firearms. Five SPD officers were dispatched in response to this call. The officers staged at a nearby location in order to make a coordinated approach to 312 Owens Street. Attempts were made by the responding SPD officers to contact the caller at the number that he had provided to the emergency call center. The SPD officers were unable to make contact with the caller. The SPD officers were then advised of the above mentioned call on August 4, 2008. SPD contacted the Portland Division of the FBI and were able to determine that there is no employee within the FBI by the name of Chris Andrews. SPD then canceled the response. I have listened to the recording of the call made by "Special Agent Chris Andrews;" the voice of "Agent Andrews" sounds the same as the voice of "Agent Ellis" and the voice of Benjamin Kerensa from the calls made on August 4, 2008.

PAGE 5 -      AFFIDAVIT OF W. MONTY WALDRON

11.     On August 11, 2008, a call was made to the Salem area 911 dispatch center from telephone number (707) 485-4573, in which the caller claimed that shots had been fired at 316 Owens Street. The caller requested that police and paramedics respond immediately to that location as someone had been shot in the apartment. I have listened to the recording made of that call; the caller's voice sounds to me to be the same as those of the calls described above.

12.     Around 11:30 PM on August 12, 2008, a call was made to the Salem area 911 dispatch center reporting that shots had been fired at Salem Hospital. The caller gave his name as Richard Ellis and claimed to be a security guard at the hospital. That is the same name provided during the first call in which the caller falsely claimed to be an FBI Agent. The caller wanted SPD units to "stage" in the main lobby of the hospital. SPD dispatch was unable to determine where the call was coming from because it was made using a "relay" service. I have listened to the recording of that call; the caller's voice sounds to me to be same as the voices in the above-described calls.

13.     A real Salem Hospital security guard later reported seeing a man matching the description of Benjamin Kerensa in the hospital. According to the security guard the man was sitting at a table using a laptop computer and appeared to be "messaging" people. The man told the security guard that he was using the hospital's wireless Internet network to make contact with a friend who was going to give him a ride from the

hospital. The security guard reported that the man left the hospital a short time before Salem Police arrived in response to the 911 call.

14.    During the early morning hours on August 13, 2008, shortly after the call reporting shots fired at the Salem Hospital, Benjamin Kerensa was arrested by SPD officers. SPD located Kerensa after he called 911 and advised that he wanted to "hurt himself." In his possession at the time of his arrest was a grey backpack, a black laptop bag with a charger and other miscellaneous electrical items, a Dell Inspiron Model 1825 Laptop computer, and a Samsung brand Verizon Wireless cellular telephone. Those items were seized by the arresting officers and remain in the custody of the Salem Police Department.

## RELEVANT STATUTE

15.    Title 18, United States Code, Section 912, provides:

> Whoever falsely assumes or pretends to be an officer or employee acting under the authority of the United States or any department, agency or officer thereof, and acts as such, or in such pretended character demands or obtains any money, paper, document, or thing of value, shall be fined under this title or imprisoned not more than three years, or both.

## BACKGROUND CONCERNING COMPUTER-RELATED EVIDENCE

16.    Definitions:

    a.    The term "computer,"as used herein, is defined in 18 U.S.C. §1030(e)(1) as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage

PAGE 7 -    AFFIDAVIT OF W. MONTY WALDRON

facility or communications facility directly related to or operating in conjunction with such device."

        b.     The term "computer hardware," as used herein, consists of all equipment which can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives, diskettes, and other memory storage devices); peripheral input/output devices (including keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (such as physical keys and locks, "dongles" or other physical security devices, encryption devices, and passwords or access codes).

        c.     The term "computer software," as used herein, is digital information which can be interpreted by a computer and any of its related components to direct the way they work. Computer software is stored in electronic, magnetic, or other digital form. It commonly includes programs to run operating systems, applications, and utilities.

PAGE 8 -     AFFIDAVIT OF W. MONTY WALDRON

      d.     The term "computer-related documentation," as used herein, consists of written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, computer software, or other related items.

      e.     The term "computer passwords and data security devices," as used herein, consists of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates as a sort of digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software or digital code may include programming code that creates "test" keys or "hot" keys, which preform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

      f.     The terms "records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether handmade, photographic, mechanical, or in electronic or magnetic form.

17.     Based on my training and experience, and on the training and experience of other agents and forensic examiners who I have spoken with, I have probable cause to believe that evidence pertaining to the offense of impersonation of a federal employee may be found on both the cellular telephone and the laptop computer seized from

PAGE 9 -     AFFIDAVIT OF W. MONTY WALDRON

Benjamin Kerensa at the time of his arrest. As to the cellular telephone, such evidence

may include call logs, including logs of calls made, calls received, and missed calls;

stored voice mail or text messages; stored telephone numbers and contact information;

references to the Federal Bureau of Investigation, the Salem Police Department, the

Salem Hospital, and the names of the impersonated agents and "wanted" subjects; and

other items set forth in Attachment A, incorporated herein by reference. The phone itself

is also an instrumentality of the offense. With respect to the computer, such evidence

includes records, files, or data pertaining to the FBI, the Salem Police Department, or the

Salem Hospital; the names of the agents impersonated as well as the two "wanted"

subjects; MapQuest or similar mapping program references to the locations specified in

the false 911 calls; and other items identified in Attachment A. The computer may also

contain evidence concerning the use of a "relay"service, such as a "TTY" relay, to place

the 911 call concerning shots fired at the Salem Hospital on August 12, 2008.

     18.    Based on my training and experience, and on the knowledge, training, and

experience of other agents and computer forensic examiners with whom I have spoken, I

know that computer-related evidence may be important to a criminal investigation in two

distinct respects: (1) the computer equipment and software themselves may be

instrumentalities, fruits, or evidence of crime; and (2) they may have been used to collect

and store information about crimes (in the form of electronic data).

19.     Based on my training and experience, I also know that it is most often necessary, in order to conduct a complete search of a computer, that the device and peripherals be removed for examination by a qualified expert in a controlled laboratory setting. Because computer evidence is extremely vulnerable to tampering or to destruction through inadvertence, error, electrical outages, and other causes, removal of the system and examination in a controlled laboratory setting will assist in retrieving the records authorized to be seized, while avoiding accidental destruction or alteration of the records and preservation of that material which belongs to the owner. In addition, the manner in which data or software is stored may in fact have evidentiary value by virtue of its catalogue placement, groups of other documents in files, and other information, and that such information is best determined in a controlled, laboratory setting.

20.     Based on my training and experience, I know that it is often possible for a trained computer forensic computer examiner to recover data from a computer even if it has been deleted, hidden, or encrypted by the user. I am also aware that such evidence can be and often is recoverable well after being deleted by the user. Such data recovery can occur with respect to data stored on a computer's hard disk drive, as well as data stored on removable storage media. Data recovery is often difficult, highly technical, and time-consuming, and can a substantial period of time to complete.

21.     I also know that a computer that accesses the Internet records and stores information from web sites which were visited by the user. This information includes

PAGE 11 -    AFFIDAVIT OF W. MONTY WALDRON

basic log information, the name, date and time that the site was visited and, sometimes, for how long, and, in some cases, how frequently the site was visited. Internet search terms may also be recoverable. Such information may be recovered even if the user has attempted to delete it from his or her computer.

22.     Based on my training and experience, I know that computer users may try to hide or disguise a file of evidentiary value by giving it a misleading file name or extension, or by placing it in an unusual or hidden file folder on the computer or storage medium. Computer users can also attempt to conceal data by using encryption, or by concealing data within another seemingly unrelated and innocuous file in a process called "steganography." For example, by using steganography a computer user can conceal text in an image file which cannot be viewed when the image file is opened. Therefore, in order to perform a thorough search for the evidence sought herein, it will be necessary to examine the contents of each file to determine the nature and content of the data to determine whether the material in a particular file falls within the scope of the items to be searched for and seized under the warrant. That can be a very time-consuming process which can take weeks or even months to complete.

23.     In searching for data capable of being read, stored or interpreted by a computer, law enforcement personnel executing this search warrant will employ the following procedure:

PAGE 12 -     AFFIDAVIT OF W. MONTY WALDRON

a.    Because the computer in question is already in the custody of the Salem Police Department, it will be transported to an appropriate law enforcement laboratory for a forensic review by an appropriately trained and equipped computer forensic examiner, in order to locate, extract, and seize any data that falls within the list of items to be seized set forth in Attachment A hereto.

b.    In searching the data, the forensic examiner may examine all of the data contained in the computer equipment and storage devices to view their precise contents and determine whether the data falls within the items to be seized as set forth in Attachment A hereto.  In addition, the forensic examiner may search for and attempt to recover deleted, hidden, or encrypted data to determine whether the data falls within the list of items to be seized as set forth in Attachment A.

c.    If the forensic examiner determines that the data does not fall within the scope of the items to be seized pursuant to the warrant, the government will return such items within a reasonable period of time not to exceed 60 days from the date of seizure, unless further authorization is obtained from the Court.

## CONCLUSION

24.    Based on the foregoing, I have probable cause to believe that Benjamin Jacob Kerensa has committed the offense of impersonating a federal officer or employee, in violation of Title 18, United States Code, and that evidence, fruits, or instrumentalities of that offense may be found within the contents of the laptop computer and cellular

PAGE 13 -    AFFIDAVIT OF W. MONTY WALDRON

telephone seized from him at the time of his arrest by Salem Police officers. I therefore respectfully request that the court issue: (1) a criminal complaint and arrest warrant charging Benjamin Jacob Kerensa with impersonating a federal officer or employee; (2) a warrant authorizing a search of the contents of his Dell Inspiron laptop computer for the items described in Attachment A hereto; and (3) a search of the contents of his Verizon Wireless cellular telephone for the items described in Attachment A.

25.     This affidavit and the accompanying search warrant applications were reviewed by Assistant United States Attorney Gary Sussman. AUSA Sussman told me that in his opinion, the affidavit and applications were legally and factually sufficient to establish probable cause to support the issuance of the requested search warrants, and the requested criminal complaint and arrest warrant.


W. Monty Waldron
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this _15th_ day of August 2008.


THE HONORABLE PAUL PAPAK
United States Magistrate Judge




PAGE 14 -     AFFIDAVIT OF W. MONTY WALDRON